ANNA MARIE CAMPBELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Campbell v. Commissioner
Docket No. 3539-72.
United States Tax Court
T.C. Memo 1974-186; 1974 Tax Ct. Memo LEXIS 134; 33 T.C.M. (CCH) 802; T.C.M. (RIA) 74186; July 16, 1974, Filed. John D. Steele, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax and additions to tax under section 6653(b): [1] Year
Deficiency
Addition to tax (Sec. 6653(b),I.R.C. 1954) 1966
$14,436.43
$ 7,218.22
1967
$34,230.44
$17,115.22
1968
$15,285.66
$ 7,642.83
*135 When the case was called from the trial calendar at Buffalo, New York, on May 6, 1974, there was no appearance by or on behalf of petitioner. The case was set and called for trial on May 7, 1974, and, again, petitioner did not appear. The Court was advised that petitioner had declined to make an appearance in the case. In accordance with Rule 123 of the Tax Court Rules of Practice and Procedure, petitioner was held to be in default, and a decision was ordered for respondent on all matters on which petitioner had the burden of proof. There remains for decision, in the light of the evidence presented by respondent, the issue as to whether any part of the deficiencies for 1966, 1967, and 1968 was due to fraud within the meaning of section 6653(b). FINDINGS OF FACT Petitioner Anna Marie Campbell, was a legal resident of Niagara Falls, New York, at the time she filed her petition. During the years in controversy, she was employed by the Manufacturers and Traders Trust Company (hereinafter M & T or bank) in Niagara Falls. Petitioner was the senior nonofficer in charge of operations. In this position, she supervised teller operations, posted and balanced all entries made at *136 the check desk, posted and balanced the general ledger, and made monthly closing entries in the accrued interest payable accounts. She was a trusted employee with many years of service in the employment of the bank, and the bank officers relied upon her heavily without questioning the honesty or accuracy of her performance. On her income tax returns her salary from M & T (all three years) and certain interest income (1967 and 1968). During these years she embezzled the following amounts from the bank, none of which were reported as income: Year
Funds Embezzled 1966
$ 33,710.86
1967
65,891.42
1968 64,122.12
Total
$163,724.40
Petitioner's embezzlements were first discovered in September 1968 as a result of an investigation of her repeated borrowings under the bank's employee loan plan and her repayment of these loans by amounts unrelated to her known income sources. On October 3, 1968, she was interviewed by special agents of the Federal Bureau of Investigation (FBI) concerning irregularities in the accounts. During the course of this interview, she gave the special agents a statement in which she admitted posting fraudulent items to the accrued interest *137 payable account in the general ledger in the total amount of $25,573.56.In this statement she denied that she had manipulated any other accounts or that she was responsible for any other irregularities at the bank office in which she was employed. Immediately after making this statement to the FBI agents, petitioner made partial restitution to the bank by turning over $17,900 in cash, savers certificates, and savings bonds.
As the investigation progressed, it was discovered that petitioner's statement to the FBI agents was false and misleading. She had, in fact, embezzled at least $163,724.40 between March 18, 1966, and September 30, 1968. These embezzlements were accompanied by making fictitious entries to (1) the Reserve for Canadian Exchange account in 1966, 1967, and 1968, (2) three different accrued interest payable accounts in 1967 and 1968, and (3) a dormant savings account in 1967.
A summary of petitioner's embezzlements at the bank during each of the years 1966 through 1968 is as follows: Year
Canadian Exchange
Accrued Interest Payable Accounts
Other
Total 33,710.86
$ 33,710.86
1967
40,905.10
$24,886.32
$100.00
$65 ,891.42
1968 38,548.50 25,573.62 64,122.12
$113,164.46
$50,459.94
$100.00 $163,724.40
*138 Petitioner attempted to conceal her embezzlement income by placing it in bank accounts and property in fictitious names and in the names of friends and relatives. On May 14, 1970, petitioner was indicted on 14 counts of embezzling and wilfully misapplying bank funds in violation of 18 U.S.C. 656. On October 26, 1970, she pleaded guilty to Counts I and II and was fined $10,000 and sentenced to prison for 18 months. During the taxable year 1968, the bank recovered $38,824.98 of the funds embezzled by petitioner. In October 1970, the bank and its bonding company entered into the following settlement with respect to petitioner's embezzlements: Original Claim [representing funds embezzled by petitioner]
$163,724.40
Less:Offset for Accounts and Assets Recovered by the Bank 38,824.98
Net Claim
124,899.42
Received from the Bonding Company 115,000.00
Loss to the Bank $9,899.42
The $9,899.42 includes the $5,000 deductible from the bank's loss under the terms of the bond. Petitioner understated her taxable income on her income tax returns for 1966 through 1968 by the amounts of $33,710.86, $65,891.42, and $25,297.14, respectively. *139 Petitioner understated her income tax liabilities on her income tax returns for 1966 through 1968 in the amounts of $14,436.43, $34,230.44, and $10,050.45, respectively. At least part of the underpayment of tax for each of these years was due to fraud within the meaning of section 6653(b). OPINION The burden of proving that respondent's determination of the amounts of the deficiencies were erroneous rested with petitioner. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practive and Procedure. As a result of her default, by not appearing at the trial or otherwise presenting any evidence in support of her allegation that the determinations were erroneous, petitioner has failed to carry her burden of proof. However, in the course of the presentation of his evidence, respondent's counsel acknowledged that respondent had not given petitioner the benefit of loss deductions under section 165(c) (2) for the full amount of the repayments made in 1968. Our Findings as to the amounts of petitioner's understatements of taxable income and income tax liabilities for 1968 have given effect to such additional deductions. So adjusted, respondent's determinations *140 of deficiencies for the years in controversy are sustained. As to respondent's allegations of fraud, he has the burden of proof. Sec. 7454(a). To carry his burden, respondent called as witnesses the vice president and auditor of the bank and one of the FBI agents who conducted the investigation of petitioner's embezzlements. Through their testimony and exhibits, which they identified and explained, the method and detail of the misappropriations, petitioner's admissions as to her embezzlements in 1968, and the criminal proceedings which resulted were described. Also introduced were the income tax returns filed by petitioner for 1966, 1967, and 1968, in which she reported as income only her salary and small amounts of interest. Considering the record as a whole, we hold the evidence offered by respondent is sufficient to establish a prima facie case that at least part of the deficiencies for 1966, 1967, and 1968 was due to fraud. To adjust the amount of the deficiency for 1968 for the additional deduction under section 165(c) (2) to which petitioner is entitled, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue. ↩